## Plum Tree, Inc. v. Seligson

*Michael J. Brillhart* and *Markowitz, Kagen & Griffith,* for plaintiff.

*Spencer R. Liverant* and *Liverant, Senft & Cohen,* for defendant.

SHADLE, J., July 28, 1972.—Plaintiff granted to defendants a franchise to operate a retail merchandising establishment. Plaintiff procured a lease for a store in a shopping center which it subleased to defendants to operate the establishment therein. Defendants now occupy the premises under the sublease which requires, inter alia, that they pay to plaintiff the prescribed rent ". . . without any set-off or deduction whatsoever." Plaintiff by its complaint in ejectment alleges that defendants failed to pay the rent which became due on August 1, 1971, and by letter dated June 14, 1971, advised plaintiff of defendants' intention to discontinue payment of any future rent. Plaintiff therefore seeks to recover possession of the premises by reason of defendants' failure to pay rent.

Defendants by their answer deny that any rent is due, that they are in default, or that plaintiff is entitled to recover possession. By way of new matter defendants allege that the franchise agreement, original lease and sublease all were part of a single transaction, and that on June 14, 1971, they rescinded the franchise agreement, demanded repayment of amounts they paid and expended thereunder, and agreed to credit against such repayment any rents paid by plaintiff under the original lease. Defendants contend that the entire transaction between the parties is invalid because plaintiff induced execution of the franchise agreement by false representations and breached the same in a number of stated respects, thereby causing defendants to suffer damages by payments and expenses in excess of the rent claimed by plaintiff; that the terms of the franchise agreement are in stated respects unlawful and invalid; and that plaintiff has sought by a multiplicity of litigation excessive damage claims and abuse of process, including a pending action against defendants in the United States District Court for the Eastern District of Pennsylvania, to recover damages for breach of the franchise agreement and sublease; and to harass and intimidate defendants. For all of such reasons defendants claim that they are entitled to retain possession of the subleased premises and that plaintiff is barred from any right to recover possession thereof in this action of ejectment until defendants' rights have been vindicated and their damages rectified.

Plaintiff has filed preliminary objections to defendants' answer and new matter in the nature of (1) a demurrer on the ground that the alleged facts "failed to set forth a defense" to the action, and (2) a motion to strike such allegations as impertinent and irrelevant to plaintiff's cause of action in ejectment. It is these

preliminary objections which are before us for disposition.

Both parties have at some length discussed the ancient principle of landlord and tenant law as to what type of covenant breach by a landlord will or will not excuse a tenant from paying rent or subject him to eviction for failure to pay. Cases such as Obermeyer v. Nichols, 6 Binney 158 (1813), and Prescott v. Otterstatter, 85 Pa. 534 (1878), attempt to distinguish between breaches of covenants by a landlord which will or will not allow a tenant to remain in occupancy without paying rent on the basis of whether the landlord's covenant is or is not "minor and subordinate, and did not go to the essence of the contract . . ."

We derive no help at all from these semantics. The precise question before us here, stated as bluntly as possible, is whether defendants should be permitted to continue to occupy the premises without payment of current rent because of all the malefactions of which defendants accuse plaintiff and may eventually be able to prove, or whether defendants now should be evicted because of their failure to pay the rent which the sublease, considered in isolation, required them to do.

We think the answer lies in the nature of the entire transaction between the parties. When this case was last before us we categorically concluded that the franchise agreement and the sublease constituted a single integrated transaction. In The Plum Tree, Inc. v. Seligson, 86 York 41 (1972), we said this:

"Paragraph 5 of the franchise agreement . . . sets forth that defendants shall execute a lease at a stipulated rental, and that both the execution of the lease and payment of the rental 'shall constitute a part of the consideration for the granting of the within franchise and license.' Paragraphs 7 and 8 of the sublease

. . . provide that failure to pay the stipulated rent 'shall constitute and be considered a default of the Franchise Agreement, wherefore Sublessor or Franchisor shall be entitled to the enforcement of any and all rights under said Franchise Agreement.' It does not require great mental agility to conclude that the right to the franchise and the obligation to pay rent are integrated under the two instruments, and reference is distinctly made to the franchise agreement for the remedy on default."

This being so, it seems manifestly unfair to conclude that noncompliance by defendants with the rent payment covenant in the sublease should require their immediate eviction regardless of how many or how serious derelictions plaintiff may have committed under the franchise agreement which was an integral part of the same transaction. Defendants here have alleged at great length violations and defects as to the franchise agreement which they claim by their answer justifies their nonpayment of rent and prevents their eviction. Whether defendants can prove any or all of such allegations, and if so, whether defendants' failure to pay rent and surrender possession are justified thereby, is an entirely different matter. We do conclude, however, that the contents of defendants' answer, if proved, are sufficient to be submitted as a defense to the proper tribunal in the resolution of the ultimate dispute. This being so, the answer is neither subject to demurrer nor to being stricken.

## ORDER

And now, July 28, 1972, plaintiff's preliminary objections to defendants' answer and new matter are overruled, with leave to plaintiff to file an answer to the new matter within 20 days from this date. An exception is noted for plaintiff.